**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCI SPARK LLC, | |
| Plaintiff, | Civil Action No. 25-cv-1678 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Sci Spark LLC, ("Plaintiff" or "Sci Spark"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed and infringing versions of Plaintiff's federally registered copyright-protected design (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's copyrighted design by, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling products bearing unlicensed and infringing versions of Plaintiff's Copyrighted Work. Additionally, Defendants are liable for contributory infringement as they knowingly induce, cause, or materially contribute to the infringing conduct of others by providing

1

means and platforms for the sale and distribution of Infringing Products. Plaintiff is forced to file this action to combat Defendants' infringement of its copyright-protected work of visual art, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyright and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.      Sci Spark, LLC is a Delaware company whose main business is artwork and design acquisition and licensing. Sci Spark spent a considerable amount of time identifying and acquiring valuable artworks from reputable artists and designers. to license the rights to utilize its works to manufacturers and other companies for various Sci Spark plans purposes including but not limited to AI training, all of which will be expected to generate a considerable amount of revenue.

2.      Sci Spark is the owner and sole rights holder to a monster truck pattern ("Copyrighted Work"). Sci Spark obtained the Copyrighted Work via a signed assignment of rights from the original author, Marina Smorodinskaia. After obtaining the rights from Smorodinskaia, Sci Spark registered the Copyrighted Work with the United States Copyright Office under registration VA 2-441-223 with an effective date of registration of December 30, 2024.

3.      A true and correct copy of the registration certificates for the Copyrighted Work is attached as Exhibit 1.

4.      The Copyrighted Work was created and first published by Smorodinskaia in 2021. Smorodinskaia is a Russian artist who creates digital designs and varying patterns. Smorodinskaia has published her works on her shutterstock.com profile, many of which are very popular. The

Copyright Work was protected by having a watermark so that only authorized and licensed users can download the Copyright Work without the watermark, after entering a specific username and password to a user portal on shutterstock.com.

5.      These technological measures were implemented to prevent unauthorized use and download of the Copyrighted Work. The Copyrighted Work was identified on the Shutterstock website with a specific image ID associated with the author, which is the copyright management information ("CMI") and known as a "gutter credit" as a common practice. The image ID is specific to the author and not shared with any other authors:



6.     After obtaining the copyright registration for the Copyrighted Work, Sci Spark

conducted an internet inquiry and discovered that the Defendants were selling products that

displayed or consisted of the Copyrighted Work, despite having no license or authorization to use

the Copyrighted Work on their products. Defendants circumvented the technological measures.

7.     Defendants' Infringing Products are unauthorized, inferior reproductions that fail

to meet Plaintiff's quality standards and damage Plaintiff's reputation in the marketplace. The

Infringing Products threaten to destroy Plaintiff's reputation and goodwill and cause significant

4

harm to Plaintiff's business for which there is no adequate remedy because copyright licensing is the core of Sci Spark's business.

8. On information and belief, Defendants' infringing activities of offering for sale and selling Infringing Products arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

9. On information and belief, Defendants intentionally circumvented the technological barrier and removed the watermark and the CMI.

10. Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), et seq, and for violation of and the Digital Millennium Copyright Act (DMCA) (17 U.S.C. § 1201 (a)(1) and 17 U.S.C. § 1202 (b)).

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101, *et seq,* and the Digital Millennium Copyright Act (DMCA) (17 U.S.C. § 1201 (a)(1) and 17 U.S.C. § 1202 (b)).

**Personal Jurisdiction**

12. Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft,* 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*

819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

13.    Although the Third Circuit has not yet considered specific jurisdiction arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994,

2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at *15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact to any particular state and have not established which forum would be proper venue to bring suit. *Id.* at *16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

14.     Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

15.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites such as Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, and others (the "Third Party Platforms"), under the Seller Aliases, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

16.    Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

17.     Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

18.     Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

19.     Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

20.     Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

21.     Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

22.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

23.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

24.     Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.*, Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc*, No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

26.    Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to its Copyrighted Work, but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 2, each of the Defendants offers for sale products infringing upon Plaintiff's Work to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

| Copyrighted Work | Infringing Listing |
|---|---|
|  | DOE#2 – |

27.     Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy* 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

28.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign companies who do not reside in any other United States judicial district, as provided for in Section 1391(b)(1); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non resident defendants may be sued in **any** judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.*, No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district). Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

29.     Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

30.     For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff Sci Spark LLC

31.     Sci Spark is a limited liability company established in Delaware.

32.     Sci Spark is an artificial intelligence company actively engaged in international copyright licensing, with established commercial operations focused on licensing valuable intellectual property rights to third parties. Sci Spark is the owner of all rights, title, and interest in Plaintiff's Copyrighted Work.

33.     The Copyrighted Work is intended to be licensed to others for use on, among others, printing products ("Plaintiff's Products") through authorized on-line retail channels and AI training, representing significant commercial value in the marketplace with the potential to receive hundreds of thousands to millions of dollars.

34.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Work.

35.     Plaintiff plans to expand the manufacturing and sales of the products featuring its copyrighted works, including the Copyrighted Work asserted in this case. Plaintiff also plans to license its works to other manufacturers who will be using the designs on various products and to other A.I. companies for A.I. training.

36.     Plaintiff plans to widely advertise and promote genuine goods bearing Plaintiff's Copyrighted Work by authorized distributors and third parties via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its potential authorized distributors will be expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow

Plaintiff and its potential authorized retailers to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's products. Similarly, Defendants' individual Seller Aliases are indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

37.    Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller Aliases in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants conduct business or assist in business conducted throughout the United States (including within the State of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate infringing versions of Plaintiff's Copyrighted Work. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Pennsylvania and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate infringing versions of Plaintiff's Copyrighted Work.

38.    The Seller Aliases share unique identifiers establishing a logical relationship between them and reflecting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their sophisticated illegal operation, including changing the names of their stores multiple times,

opening new stores, helping their friends open stores, and making subtle changes to their products and listings.

39.    On information and belief, Defendants create their online Seller Aliases and advertise what appear to be genuine copies of Plaintiff's two-dimensional visual artistry, without any permission or license from Plaintiff.

40.    Defendants appear to be an interrelated group of infringers, who create the Seller Aliases on various third-party online platforms and design these stores to appear to use genuine versions of Plaintiff's Copyright Work, while they actually sell inferior infringing imitations of Plaintiff's Products. The Seller Aliases share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence. These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which they are required to present as part of their defense, Plaintiff will amend the Complaint accordingly. Furthermore, based on the nature of Defendants' activities, they do not qualify for any safe harbor provisions under the Digital Millennium Copyright Act (DMCA) or other relevant laws, as they are actively involved in the creation, promotion, and sale of Infringing Products rather than acting as mere service providers or intermediaries. Additionally, Defendants are vicariously liable for the infringing activities

occurring through their platforms, as they have the right and ability to control the infringing activity and directly benefit financially from the infringement.

## **DEFENDANTS' UNLAWFUL CONDUCT**

41.    The popularity and intrinsic artistic value of the Copyright Work has resulted in significant infringement. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps. Plaintiff has identified hundreds of fully interactive e-commerce stores, including the Seller Aliases, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. Based on Plaintiff's investigation, Defendants have sold countless varying types of Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

42.    Defendants operate at least the Seller Aliases identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of Plaintiff's Copyrighted Work and/or works substantially similar thereto.

43.    Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not. To illustrate, below are several examples which show that the Infringing Products prominently feature exact copies of the Copyrighted Work:

| Seller Alias and Doe # | Evidence |
|---|---|
| **DOE#1 - AMAZON -**  | |
| **DOE#121 - TEMU -** | |
| **DOE#186 - Walmart -** | |

44.     Screenshot evidence showing each Seller Alias on Schedule A selling Infringing Products is attached as Exhibit 2.

45.     Defendants' unauthorized reproduction, distribution, and public display of Plaintiff's Copyrighted Work is irreparably harming Plaintiff and its business.

46.     According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. *See* Exhibit 3 at 2. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *See* Exhibit 4 at 8.

47.     E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple Defendant Internet Stores in attempts to avoid detection.

48.     As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Online internet stores like the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Online internet stores like the Seller Aliases often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized any of the Defendants to copy, distribute, or publicly display Plaintiff's Copyrighted Work, and none of the Defendants are authorized to sell Plaintiff's

Products. Furthermore, Defendants are accused of inducing infringement by intentionally creating and operating platforms that encourage and assist others in infringing Plaintiff's Copyrighted Work. This includes providing tools, resources, and infrastructure that enable and promote the sale of Infringing Products, as well as actively marketing and advertising these infringing goods to consumers.

49.     Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

50.     Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on e-commerce platforms such as Amazon, eBay, Temu, Wish, Walmart, and other Third Party Platforms. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

**The Scope of Defendants' Infringing Activities**

51.     Upon information and belief, each Defendant operates more than one merchant storefront.

52.     Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

53.     Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

54.    Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $100,000.

## JOINDER OF DEFENDANTS

55.    As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images. The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

56.    On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. *See* Exhibit 5. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar cases shows that defendants

often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for small amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

57.    Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants appear to be an interrelated group of infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products. The Seller Aliases share unique identifiers, such as the following: common design elements, the same or similar Infringing Products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

58.    These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## <u>COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)</u>

59.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

60.    Plaintiff's Copyrighted Work constitutes a creative, original work of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102. Plaintiff hereby verifies that the Copyrighted Work is entirely original and not derived from any other copyrighted work without permission.

61.    Plaintiff is the owner of valid and enforceable copyright in Plaintiff's Copyrighted Work.

62.    Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Work and has obtained valid copyright registration for Plaintiff's Copyrighted Work. The copyright registration precedes the date of the alleged infringement which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 412.

63.    Defendants do not have any ownership interest in Plaintiff's Copyrighted Work.

64.    Defendants had access to Plaintiff's Copyrighted Work via the internet and, as evidenced by their sophisticated business operations and the widespread nature of Plaintiff's Copyrighted Work, had actual knowledge of Plaintiff's copyright before engaging in the infringing activities described herein. The Copyrighted Work was created by a well-known artist whose works have seen great success on Shutterstock and elsewhere online.

65.    Without authorization from Plaintiff, the original creator of the Copyrighted Work, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, products incorporating Plaintiff's Copyrighted Work, in connection with their operation of the Defendant Internet Stores.

23

66.    Defendants' Infringing Products incorporate works that are virtually identical to and/or are indistinguishably similar to Plaintiff's Copyrighted Work.

67.    Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Work in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5). Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe Plaintiff's copyright through their distribution and sale of Infringing Products. Moreover, Defendants' actions have enabled and facilitated direct infringement by third parties who purchase and use the Infringing Products. By providing the means and platform for this direct infringement, Defendants are secondarily liable for contributory infringement and vicarious liability, as established in *Leonard v. Stemtech Int'l, Inc*., 834 F.3d 376, 386 (3d Cir. 2016) citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Their actions are inextricably linked to the underlying acts of direct infringement committed by the end-users of the Infringing Products.

68.    Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Work through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

69.    Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that use Plaintiff's Copyrighted Work without its permission.

70.    Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights. Any claim by Defendants of ignorance regarding the infringement is without merit, as the widespread nature of Plaintiff's

Copyrighted Work and Defendants' sophisticated business operations make it implausible that Defendants were unaware of their infringing activities.

71.    Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

72.    Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

73.    Considering the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's Copyright by Defendants.

**COUNT II**
**VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA)**
**(17 U.S.C. § 1201 (a)(1) and 17 U.S.C. § 1202 (b))**

74.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

75.    17 U.S.C. § 1201(a)(1) prohibits anyone from circumventing a technological measure that effectively controls access to a work protected under this title.

76.    Technological measures controlling access to the Copyrighted Work were implemented via requiring specific user registration, payment, and password, along with watermark protection. Defendants illegally gained access to Plaintiff's Copyrighted Work, bypassed the technological barriers and removed the watermark.

77.    17 U.S.C. § 1202(b) prohibits any person or entity from intentionally removing or altering any copyright management information, distributing or importing for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or distributing, importing

for distribution, or publicly performing works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under 17 U.S.C. § 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right protected under that title.

78.    To establish a claim for removal of CMI, a plaintiff must demonstrate: (1) the existence of CMI on the work at issue; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally. *Sadowski v. Ng*, 2022 U.S. Dist. LEXIS 46315, at \*23 (S.D.N.Y. Mar. 15, 2022).

79.    CMI has an "extremely broad" definition and includes all types of information listed in 17 USCS § 1202(c)(1)-(8) and conveyed in connection with copies of a work, regardless of the form in which that information is conveyed. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 298 and 302 (3d Cir. 2011). Gutter credit printed in a smaller type and running perpendicular to the relevant image on the page is CMI whose alteration would constitute a violation of these statutes. *Id.* at 299; see also *Wood v. Observer Holdings, LLC*, No. 20-CV-7878, 2021 WL 2874100, at \*6 (S.D.N.Y. July 8, 2021) (finding that a "credit line attribution" placed "below each of [] 13 photos constitutes CMI").

80.    Upon belief and information, Defendants had reasonable grounds to know that removal of Plaintiff's gutter credit would induce, enable, facilitate, or conceal an infringement of Plaintiff's rights under 17 U.S.C. § 1202 (b), but still intentionally removed that CMI.

81.    The Digital Millennium Copyright Act grants standing to the owner of a work regardless of whether the work has been copyrighted, meaning that standing to sue for CMI violations of a given work is transferred upon acquisition of that work. 17 U.S.C. § 1203.

82.     Plaintiff has the requisite standing as it acquired the Copyrighted Work from the original author through a valid transfer agreement establishes the clear chain of title to Sci Spark. Defendants have violated at least 17 U.S.C. § 1201(a)(1) and 17 U.S.C. § 1202 and are liable to Plaintiff under 17 U.S.C. § 1203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, directing as follows:

(1)     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from:

      (a)     Reproducing, distributing, publicly displaying, and preparing derivative works based upon the Copyrighted Work;

      (b)     making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Work;

      (c)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

      (d)     aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyright in Plaintiff's Copyrighted Work.

(2)     Directing that Defendants deliver for destruction, at Defendants' expense, all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Work.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

      (a)    Locate all accounts connected to Defendants;

      (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

      (a)    Locate all accounts connected to Defendants;

      (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5)    Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(6)     Awarding Plaintiff statutory damages based on Defendants' willful violation of the DMCA under 17 U.S.C. § 1201 (a)(1), pursuant to 17 U.S.C. § 1203 (c)(3)(A), in an amount up to $2,500 but no less than $200 per infringement act, per Defendant, or such other amount as the Court deems just and proper;

(7)     Awarding Plaintiff statutory damages based on Defendants' willful violation of DMCA under 17 U.S.C. § 1202 (b)), pursuant to 17 U.S.C. § 1203 (c)(3)(B), in an amount up to $25,000 but no less than $2,500 per infringement act, per Defendant, or such other amount as the Court deems just and proper;

(8)     Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's copyright in Plaintiff's Copyrighted Work as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(9)     Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203(b); and

(10)    Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: October 27, 2025                           Respectfully submitted,

                                                 */s/ Michael Mitchell*
                                                 Michael Mitchell IL #6324363
                                                 Shengmao (Sam) Mu NY #5707021
                                                 Abby Neu IL #6327370
                                                 Keaton Smith IL #6347736
                                                 Ryan E. Carreon DE #7305
                                                 **WHITEWOOD LAW PLLC**
                                                 57 West 57th Street, 3rd and 4th Floors
                                                 New York, NY 10019
                                                 Telephone: (917) 858-8018
                                                 Email: mmitchell@whitewoodlaw.com

                                                 *Counsel for Plaintiff*

## SCHEDULE A

| DOE # | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | | | |
| 38 | | | |
| 39 | | | |



| 81 | |
| 82 | |
| 83 | |
| 84 | |
| 85 | |
| 86 | |
| 87 | |
| 88 | |
| 89 | |
| 90 | |
| 91 | |
| 92 | |
| 93 | |
| 94 | |
| 95 | |
| 96 | |
| 97 | |
| 98 | |
| 99 | |
| 100 | |
| 101 | |
| 102 | |
| 103 | |
| 104 | |
| 105 | |
| 106 | |
| 107 | |
| 108 | |
| 109 | |
| 110 | |
| 111 | |
| 112 | |
| 113 | |
| 114 | |
| 115 | |
| 116 | |
| 117 | |
| 118 | |
| 119 | |
| 120 | |
| 121 | |

| 122 | |
| 123 | |
| 124 | |
| 125 | |
| 126 | |
| 127 | |
| 128 | |
| 129 | |
| 130 | |
| 131 | |
| 132 | |
| 133 | |
| 134 | |
| 135 | |
| 136 | |
| 137 | |
| 138 | |
| 139 | |
| 140 | |
| 141 | |
| 142 | |
| 143 | |
| 144 | |
| 145 | |
| 146 | |
| 147 | |
| 148 | |
| 149 | |
| 150 | |
| 151 | |
| 152 | |
| 153 | |
| 154 | |
| 155 | |
| 156 | |
| 157 | |
| 158 | |
| 159 | |
| 160 | |
| 161 | |
| 162 | |

